Case No. 1:96-CV-989-CC

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LAWRENCE JEFFERSON,

Petitioner,

v.

STEVE UPTON, Warden,

Respondent.

**PETITIONER'S REPLY TO RESPONDENT'S BRIEF REGARDING ISSUE
REMANDED BY SUPREME COURT**

JOHN R. MARTIN
Georgia Bar No. 473325
202 Grant Building
44 Broad Street, N.W.
Atlanta, Georgia  30303
(404) 522-0400

JEFFREY ERTEL
Federal Defender Program, Inc.
1500 Centennial Tower
101 Marietta Street
Atlanta, GA  30303
(404) 688-7530

**Attorneys for Lawrence Jefferson**

## I. INTRODUCTION

Petitioner Lawrence Joseph Jefferson, by and through undersigned counsel, hereby replies to the Respondent's Brief Regarding Deference Owed the State Courts' Finding (Doc. 201)(the "Respondent's Brief"). Petitioner, of course, relies primarily upon the Petitioner's Brief Regarding Issue Remanded by Supreme Court (Doc. 200)(the "Petitioner's Brief") as the comprehensive statement of his position that this Court is not obligated to give any deference to the state habeas corpus court's factual findings in this case, because he was not given a "full, fair and adequate" fact finding procedure in state court consistent with due process, pursuant to the former 28 U.S.C. §2255(d)(2), (6) and (7) and the principles of Townsend v. Sain, 372 U.S. 293, 313 (1963). Petitioner will merely reply to specific points made by Respondent in the Respondent's Brief.

## II. THE STATE EVIDENTIARY HEARING

Petitioner does not claim that he was denied the opportunity to present evidence at an evidentiary hearing, nor the opportunity to present legal argument in a post-hearing brief, which Respondent believes are significant circumstances. (Respondent's Brief, p. 5). Petitioner was given the opportunity to present whatever evidence and legal argument he wanted to present during the state court habeas corpus proceedings. What

he was denied was the state habeas corpus court's giving due consideration to this evidence and argument, especially with respect to making critical credibility choices.

Similarly, the Petitioner does not contend that there is not sufficient evidence to support the Final Order executed by the state habeas corpus court (Respondent's Brief, p. 8). But again, this misses the point. It was clear what the evidence was, but the dispute between the parties was whose evidence should the state habeas corpus court credit. In particular, the critical issue was whether the state habeas corpus court should credit the testimony of the trial attorneys, Steven Schuster and Mark Cella, that Dr. David Dudley, the psychologist they had arranged to evaluate Petitioner, had recommended further neuropsychological testing in his written report to them, but that Dr. Dudley in a later telephone conversation—-curiously not supported by Mr. Schuster's billing records—-had rescinded what he had written, instead describing the Petitioner as simply "just a criminal,"[1] or whether it should credit the affidavit of Dr. Dudley unequivocally contradicting the testimony of Mr.

---

[1] It is hard to conceive that a psychologist recommended by George Kendall, the head of the American Civil Liberties Union death penalty project, would be so flippant about a psychological evaluation of a defendant facing the death penalty. (State Habeas Corpus Transcript (Exhibit 39), pp. 165, 173).

Schuster and Mr. Cella. (State Habeas Corpus Transcript (Exhibit 39), pp. 174-176; Petitioner's Exhibit 24).

### III. **THE OPPORTUNITY TO PRESENT A COMPETING PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Respondent makes much of the fact that Petitioner's state habeas counsel were not prevented from submitting their own proposed findings of facts and conclusions of law. (Respondent's Brief, pp. 6-7). One can quibble over whether Respondent was given a meaningful opportunity to present his own proposed findings of facts and conclusions of law in light of the Government's own concession that state habeas corpus court had "reached a firm decision prior to the solicitation of the order" from counsel for Respondent disposing of the case (Respondent's Brief, p. 6). Moreover, when counsel for Petitioner filed a Motion to Recuse Hearing Judge and a Motion to Disclose Ex Parte Communications when he first learned, only through counsel for Respondent, that the state habeas corpus judge had requested a proposed Final Order from counsel for Respondent, the state habeas corpus judge did not then solicit or invite a proposed Final Order from counsel for Petitioner.

But even if Petitioner had a meaningful opportunity to present a competing proposed Final Order to the state habeas corpus judge, this circumstance, although relevant, is hardly dispositive. Surely, no one would contend that a party received

3

a full, fair and adequate hearing consistent with due process if the judge who had already made up his mind as to the final result of the case merely went through the formality of soliciting proposed Final Orders from both sides and then signed the proposed Final Order of the party who he had already determined should prevail without even reading it, much less the proposed Final Order of the opposing side.

After all, the Supreme Court in <u>Anderson v. City of Bessemer, N.C.</u>, 470 U.S. 564, 572-573 (1985), listed the opportunity to respond to a proposed finding as only one factor in deciding whether the execution of a verbatim proposed order from a prevailing party nevertheless reflected "the judge's own considered conclusions." But, even more important the Supreme Court in its Order in this case explained that it had never endorsed such a procedure "where (1) a judge solicits the proposed findings *ex parte* (as here), (2) does not provide the opposing party an opportunity to criticize the findings or to submit his own (arguably present here) <u>or</u> (3) adopts findings that contain internal evidence suggesting the judge may not have read them." <u>Jefferson v. Upton</u>, 130 S.Ct. 2217, 2223 (2010)(Emphasis added). It is significant that the Supreme Court used the disjunctive "or" in listing what it considered to be significant circumstances.

4

## IV. **EVIDENCE THAT THE JUDGE DID NOT READ, MUCH LESS GIVE CAREFUL CONSIDERATION, TO THE PROPOSED FINAL ORDER**

Respondent claims that Petitioner "has presented no evidence that the state habeas corpus court did not review the order prior to adopting it as his own" and dismisses what it calls simply "typographical errors in the proposed order that were not corrected by the state habeas corpus court." (Respondent's Brief, pp. 11-12). There might be something to the Respondent's claim if there was only one or two small "typographical" mistakes in the Final Order executed by the state habeas corpus judge. But, counsel has listed 21 such errors, including obvious mistakes, such as spelling the word "battery" as "batty," the word "reserved" as "reservd," the word "statements" as "statemets," the word "counsel's" as "counse's," the word "crimes" as "crimed," and the word "remarks" as "remakrs." (Petitioner's Brief, pp. 7-8). None of these major nor any of the more minor errors in the proposed Final Order were corrected by the state habeas corpus court, which would have at least offered some assurance that the judge actually read the Order. See, Colony Square Co. v. Prudential Ins. Co., 819 F.2d 272, 274 (11th Cir. 1987)(The judge's own "minor typographical corrections" was a factor in assuring that the judge actually read the ghostwritten order.).

But most important of all is the reference to an Affidavit by attorney Michael Hauptman, even though no such affidavit was presented by counsel for Petitioner. How can it be fairly concluded, as Respondent claims, that the state habeas corpus court was conversant with the entire record in the case and carefully decided the case based on that entire record (Respondent's Brief, pp. 9-10), when the Final Order executed by the judge, was word for word, error for error the exact same as the proposed Final Order submitted by counsel for Respondent and details an Affidavit which was never presented into evidence. Nor does it make any difference that such an affidavit would likely have been determined to be inadmissible or irrelevant (Respondent's Brief, p. 12). This totally misses the point. The point is how can we have any confidence that the Final Order executed by the state habeas corpus judge, which was ghost-written by counsel for Respondent, was the considered judgment of the state habeas corpus judge when it refers to evidence never even presented during the proceedings.[2]

---

[2]The claim that the state habeas corpus judge utilized his law clerk to formulate an informed decision about the case is simply belied by Mr. English's testimony. (Respondent's Brief, p. 10). While Mr. English, who did not attend the evidentiary hearing, remembered reading the transcript and doing some research, he had limited discussions with the judge about the case and only then on the phone, did not recall reading any briefs, had no discussions with the judge about the proposed Final Order submitted by counsel for Respondent and did not remember even

6

## V. **THE CRITICAL CREDIBILITY CHOICE**

The critical and determinative credibility choice in this case was whether the testimony of attorneys Steven Schuster and Mark Cella should be credited over the affidavit of psychologist Dr. David Dudley. If the attorneys are to be believed, then their failure to follow up with neuropsychological evaluation as recommended by Dr. Dudley in his written report, might, and only might, be considered reasonable performance by counsel. On the other hand, if Dr. Dudley's affidavit is to be credited, counsel were woefully deficient in not following up on his recommendation, never rescinded by him, that neuropsychological testing be conducted in order to rule out organic injury. We now know that had such neurological testing been performed the results would have revealed compelling evidence of organic brain injury which would have offered an explanation, although not a justification, for the crime for which the Petitioner was convicted and sentenced to death. This failure to follow up on Dr. Dudley's recommendation would obviously be deficient performance to the substantial prejudice of the Petitioner.

Here, Respondent concedes that Respondent's counsel cannot remember receiving from the state habeas corpus judge any instructions or any basis for his reasoning as to why the trial

---

receiving, much less reading the proposed Final Order submitted by Respondent's counsel. (English, pp. 8-14).

7

lawyers should be believed over the psychologist (Smith, p. 12)(Respondent's Brief, p. 6-7) and the judge's law clerk, Mr. English, who was the only person who communicated with counsel for Respondent with respect to the proposed Final Order, specifically recalls that the judge gave him no instructions to relay to counsel for Respondent as to how the proposed Final Order should be framed. (English, p. 8).[3] As a consequence, we have no way to know why the state habeas corpus judge credited the lawyers over the psychologist and even the Final Order gives us no clue. (Petitioner's Exhibit 7, pp. 16-18, 37). This is just the circumstance when soliciting a proposed final order from a prevailing party and executing it without even changing a word or a comma is so dangerous. As the former Fifth Circuit explained in Keystone Plastics, Inc. v. C & P Plastics, Inc., 506 F.2d 960, 962 (5th Cir. 1975), "The reviewing court deserves the assurance that the trial court has come to grips with the apparently irreconcilable conflicts in the evidence, such as appear in the case subjudice and has distilled there from true facts and the crucible of his conscience." Similarly, the Eleventh Circuit observed in Colony Square Co. v. Prudential

---

[3] Respondent cannot manipulate the failure of Assistant Attorney General Smith to recall whether she received direction from the Court into a claim that she may have (Respondent's Brief, p. 7), in light of Mr. English's testimony that the judge gave him no instructions other than to call Ms. Smith and ask for an order denying relief. (English, p. 8).

8

Ins. Co., 819 F.2d at 275 (11th Cir. 1987), "the writing process requires a judge to wrestle with the difficult issues before him and thereby leads to stronger, sounder judicial rulings."

There is no assurance, and indeed there is every reason to believe otherwise, that the state habeas corpus judge in this case actually struggled with the irreconcilable conflict between the trial attorneys and the psychologist that evaluated Petitioner and came up with his own thoughtful resolution of that dispute. Instead, he merely signed, without changing a word (misspelled or otherwise), a punctuation mark, or a miscited case authority, a proposed order submitted by counsel for Respondent which merely resolved the dispute to the benefit of Respondent. Anderson v. City of Bessemer, N.C., 470 U.S. at 573 (One of the circumstances assuring that the order signed by the court was "the judge's own considered conclusions" was the fact that the court's order with respect to "the critical findings...varied considerably in organization and content from those submitted by petitioner's counsel."). This is not the full, fair and adequate hearing consistent with due process that any party, especially a Petitioner facing the death penalty, is entitled to receive.

## VI. CONCLUSION

Here, Respondent is asking this Court to give deference to fact findings made by another court, which in and of itself is an extraordinary procedure in resolving judicial claims. But in order to be entitled to that extraordinary deference, it is the responsibility of Respondent to show that Petitioner received a full, fair and adequate hearing consistent with due process and failing that no deference should be given. Otherwise, this Court would be required to give deference to fact finding by what was essentially a Kangaroo Court. That is not the law nor has it ever been.

The overwhelming record in this case proves that the state habeas corpus judge signed a proposed Final Order authored by Respondent, without giving counsel for Respondent any instructions about his reasoning or what he wanted in the Order, without changing a word or a punctuation mark in the proposed Order, and referring to evidence never even offered in the case,. We further know that in signing this proposed Final Order the court resolved critical credibility issues without any discussion of how those issues were determined. In these circumstances Respondent cannot show that the Petitioner received the type of full, fair and adequate hearing consistent with due process to which any court would feel comfortable deferring as to its factual conclusions. As a consequence, this

Court should now hold an evidentiary hearing with respect to the critical factual disputes in this case and to make its own <u>de novo</u> determinations as to what the evidence proves and the legal consequences thereof.

This 15th day of July, 2011.

Respectfully submitted,

s/JOHN R. MARTIN
John R. Martin

MARTIN BROTHERS, P.C.
202 The Grant Building
44 Broad Street, N.W.
Atlanta, GA 30303
(404) 522-0400

s/JEFFREY ERTEL
Jeffrey Ertel

FEDERAL DEFENDER PROGRAM, INC.
1500 Centennial Tower
101 Marietta Street
Atlanta, GA  30303
(404) 688-7530

Counsel for Petitioner
Lawrence Jefferson

CERTIFICATE OF SERVICE

This is to certify that I have this day served Beth Burton, 40 Capitol Square, S.W., Atlanta, GA 30334 with a copy of the within and foregoing **Reply to Brief Regarding Issue Remanded by the Supreme Court** using the CM/ECF system and will be electronically notified to all counsel of record and is available for viewing and downloading from the Court's CM/EMF system by all counsel of record.

This 15th day of July, 2011.

                                          S/JOHN R. MARTIN
                                          John R. Martin